1

2                                                        JS-6

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11   WILLIAM L. SCOTT,            )   CV-13-03927-RSWL-SH
                                  )
12              Plaintiff,        )
                                  )   **ORDER re: DEFENDANTS'**
13        v.                      )   **MOTION FOR JUDGMENT ON**
                                  )   **THE PLEADINGS** [34]
14                                )
                                  )
15   PATRICK DONAHOE, Postmaster )
     General, United States       )
16   Postal Service, UNITED       )
     STATES OF AMERICA, and Does )
17   1-50, inclusive,             )
                                  )
18                                )
                                  )
19   _____Defendants.___)

20        Currently before the Court is Defendants Patrick

21   Donahoe ("Donahoe") and United States of America's

22   (collectively, "Defendants") Motion for Judgment on the

23   Pleadings [34] filed July 14, 2014.  Plaintiff William

24   L. Scott ("Plaintiff") filed his Opposition on July 31,

25   2014 [37] and Defendants filed their Reply on August 6,

26   2014 [38].  This matter was taken under submission on

27   August 7, 2014 [39].  Having reviewed all papers

28   submitted pertaining to the Motion, and having

                                  1

considered all arguments presented to the Court, the Court **NOW FINDS AND RULES AS FOLLOWS:**

Defendants' Motion is hereby **GRANTED.**

## I.   BACKGROUND

### A.   <u>Factual Background</u>

Plaintiff was employed by the United States Postal Service ("USPS") from July 10, 1982 until January 30, 2012, June 30, 2012, or July 30, 2012 as a Mail Processing Clerk at the Compton Post Office.  First Amended Compl.[1] ("FAC") ¶ 8.  Plaintiff cased and spread mail including flats, worked the registered cage, and helped with unloading trucks when the workload was heavy.  <u>Id.</u> at ¶ 14.

Defendant Patrick R. Donahoe, the Postmaster General of the USPS, operates the USPS.  <u>Id.</u> at ¶ 9. Defendants Tyrone Williams and James Dear were Plaintiff's supervisors at the USPS.  <u>Id.</u> at ¶¶ 12, 13.[2]

In 2005, Plaintiff suffered an injury to his right shoulder that ultimately rendered him "permanent and stationary."  <u>Id.</u> at ¶ 15.  Between 2006 and 2009, Plaintiff was under a 10 pound lifting restriction, with no pushing, pulling, or lifting above his shoulders.  <u>Id.</u> at ¶ 23.

On November 7, 2008, Plaintiff received a Modified

---

[1] Plaintiff, oddly, lists three different dates he retired. FAC ¶¶ 8, 46, 51, 93.

[2] The United States has since substituted in place of these two individual Defendants pursuant to 28 U.S.C. § 2679(d)(1). Dkt. # 18.

Limited Duty Job Assignment - specifically, he received a "Dutch door duty assignment." Id. at ¶ 16. Plaintiff alleges that the Dutch door duty assignment had been created for, assigned to, and performed by Plaintiff. Id. Plaintiff was given another "Dutch door duty assignment" on January 8, 2009. Id. at ¶ 17.

On April 21, 2009, Plaintiff alleges that the USPS wrongfully removed him from the "Dutch door assignment" and sent him home, claiming that it did not have any work available to him. Id. at ¶ 18. Plaintiff was told to return to work in two weeks. Id. Plaintiff alleges that since his "Dutch door assignment" was taken from him, the USPS improperly assigned these tasks to other employees. Id. at ¶ 31.

On May 11, 2009, after reporting back to work and working the "Dutch door assignment" for about 35 minutes, Plaintiff was told that there was no work available for him, was sent home, and was instructed to report back to work in two weeks. Id. at ¶ 20. On May 26, 2009, Plaintiff reported back to work, but was told by his supervisor, Tyrone Williams, to leave the Postal Service property and not to return unless instructed to do so. Id. at ¶ 21. Also on May 26, 2009, Plaintiff alleges that Tyrone Williams refused to meet with Plaintiff to discuss what work he could perform with respect to his disability. Id. at ¶ 25.

On June 2, 2009, the USPS Office of Workers' Compensation Programs ("OWCP") requested a medical

update from Plaintiff. Id. at ¶ 26. Plaintiff's physician increased his lifting restrictions to 25 pounds. Id. at ¶ 27. On June 11, 2009, Plaintiff sent Ingrid McMillan, a USPS Injury Compensation staff member, copies of his physician's updated medical restrictions. Id. at ¶ 35. On June 26, 2009, Plaintiff sent McMillan a letter identifying the work at the Compton Post Office that was within his medical restrictions. Id. at ¶ 36. Plaintiff thereafter received notices from the USPS dated November 18, 2009 and December 21, 2009 that no work was available for him. Id. at ¶ 29, 39.

On February 5, 2010, Plaintiff received a letter from the USPS asking that he return to work. Id. at ¶¶ 29, 43. Plaintiff returned to work on February 8, 2010, and was given the "Dutch door assignment." Id. at ¶¶ 44, 45. On June 26, 2012, Plaintiff was confronted by one of his supervisors who ended the discussion with the threat, "What are you going to do about it?!" Id. at ¶ 50. Four days later, on June 30, 2012, Plaintiff retired from the USPS. Id. at ¶ 51.

Based on the above, Plaintiff alleges that Defendants violated the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 701, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. More specifically, Plaintiff brings claims for: (1) Disparate Treatment, (2) Retaliation, (3) Failure to Accommodate and Engage in the

4

Interactive Process, (4) Hostile Work Environment, and (5) Constructive Termination.[3]  Id. at ¶¶ 63-99.

**B.  Procedural Background**

Plaintiff filed his Complaint in this Action on May 31, 2013 [1].  He filed his FAC on July 31, 2013 [10].  The United States substituted in as the federal defendant in place of Defendants Williams and Dear on November 14, 2013 [18].

Defendants filed a Motion to Dismiss on November 19, 2013 [19], which this Court granted on January 16, 2014 [25], dismissing Plaintiff's claims for negligent and intentional infliction of emotional distress.  Soon thereafter, on February 3, 2014, Defendants filed an Answer to the FAC [26].  Defendants filed the instant Motion on July 14, 2014 [34].

This Action is at least Plaintiff's seventh attempt to bring employment or disability discrimination claims against the USPS.

Plaintiff's first action, William L. Scott v. Marvin Runyon, CV 92-3718 WMB (CTx), was filed on June 22, 1992.  Def.'s Ex. 1.[4]  There, Plaintiff alleged that

_____

[3] The Court dismissed Plaintiff's claims for negligent and intentional infliction of emotional distress on January 16, 2014. Dkt. # 25.

[4] The Court may, of course, take judicial notice of court filings and other matters of public record, particularly in determining issues of res judicata.  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002); Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998)); Fed. R. Evid. 201(b).  Plaintiff

1  the USPS discriminated against him on the basis of his

2  religious beliefs, sex, and race, and retaliated

3  against him based on prior Equal Employment Opportunity

4  ("EEO") activity.  Id. at ¶¶ 6-7.  Judgment was entered

5  against Plaintiff in this action after a trial on May

6  29, 1996.  Id. Ex. 2.

7      On September 30, 1998, Plaintiff filed another

8  action, William L. Scott v. William J. Henderson, CV

9  98-7908 DT (VAPx), for employment discrimination based

10 on Plaintiff's religion and also alleged retaliation.

11 Id. Ex. 3.  Summary judgment was entered in favor of

12 the defendant in that action.  Id. Ex. 4.

13     Plaintiff filed his third action, William L. Scott

14 v. John E. Potter, CV 06-2236 MMM (PLAx), on April 12,

15 2006, again alleging that the USPS had discriminated

16 against him on the basis of his religious beliefs, sex,

17 race, and had retaliated against his prior EEO

18 activity.  Id. Ex. 5.  The parties settled the dispute

19 without a decision on the merits.  Id. Ex. 6.

20     On June 15, 2009, Plaintiff filed the first of a

21 series of three cases under the Rehab Act, William L.

22 Scott v. John E. Potter, CV 09-04273 RGK (FMOx) ("Scott

23 I").  Id. Ex. 7.  Plaintiff alleged that he was

24 disabled within the meaning of the Rehab Act and that

25 the USPS had failed to accommodate his disability by

26

27 ─────────────────

28 does not appear to object to the validity of Defendants' attached
   documents.  As such, the Court takes judicial notice of the
   related case filings Defendants provide.

not giving him suitable work.  Id. at ¶¶ 21-28.  The
court granted summary judgment against Plaintiff on
July 9, 2010, holding that the USPS provided reasonable
accommodation to Plaintiff.  Id. Ex. 8 at 7.  The court
also found in favor of the USPS on Plaintiff's other
claims, including Plaintiff's disparate treatment,
hostile work environment, and retaliation claims.  Id.
at 4-6.

    Plaintiff followed Scott I with two more actions,
William L. Scott v. John E. Potter, CV 09-6496 RGK
(FMOx) ("Scott II"), filed September 8, 2009 (id. Ex.
9), and William L. Scott v. John E. Potter, CV 09-8702
RGK (FMOx) ("Scott III"), filed November 25, 2009 (id.
Ex. 10).  Scott II and Scott III were consolidated on
November 4, 2010.  Id. Ex. 11 at 2.  On February 8,
2011, the court granted summary judgment against
Plaintiff in Scott II and Scott III based upon the
doctrine of res judicata.  Id. at 2, 4.  The court
reasoned that all claims alleged in Scott II and Scott
III were precluded by a final judgment on the merits in
Scott I.  Id. at 4.  This judgment was affirmed on
February 4, 2013 by the Ninth Circuit in William L.
Scott v. John E. Potter, No. 11-55353.  Id. Ex. 12.
The Ninth Circuit found that Plaintiff's discrimination
and retaliation claims were properly dismissed on res
judicata grounds.  Id. at 2.

                    II.  LEGAL STANDARD

1.  Federal Rule of Civil Procedure 12(c) - Judgment on

the Pleadings

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." Knappenberger v. City of Phx., 566 F.3d 936, 939 (9th Cir. 2009) (quoting Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co., 50 F.3d 1486, 1488 (9th Cir. 1995)).

On a Rule 12(c) motion, the court must accept as true all the material facts alleged in the complaint and must draw all reasonable inferences in favor of the non-moving party. Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). In ruling on a Rule 12(c) motion, the court may not consider extrinsic evidence unless the motion is converted into a Rule 56 summary judgment. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989) (citing Fed. R. Civ. P. 12(c); Bonilla v. Oakland Scavenger Co., 697 F.2d 1297, 1301 (9th Cir. 1982)). However, a court "may consider facts that are 'contained in materials of which the court may take judicial notice'" when considering a motion for judgment on the pleadings. Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999) (quoting Barron

8

1  v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994)).

2  III.  ANALYSIS

3  **A.  Plaintiff Cannot State a Cognizable ADA Claim**
4  **Against Defendants**

5  As a preliminary matter, Plaintiff cannot state a
6  cognizable claim against Defendants under the ADA.
7  Under Title I of the ADA, "the term 'employer' does not
8  include 'the United States' or 'a corporation wholly
9  owned by the government of the United States.'"  Venter
10  v. Potter, 694 F. Supp. 2d 412, 420 (W.D. Pa. 2010)
11  (quoting 42 U.S.C. § 12111(5)(B)(i)).  As the USPS is a
12  part of the federal government (39 U.S.C. § 201), no
13  claim under the ADA is permitted against it.
14  Henrickson v. Potter, 327 F.3d 444, 447 (5th Cir.
15  2003).

16  Instead, the Rehab Act serves as the exclusive
17  remedy for discrimination in employment on the basis of
18  disability by federal agencies.  See Boyd v. U.S.
19  Postal Serv., 752 F.2d 410, 413 (9th Cir. 1985)
20  ("[S]ection 501 is the exclusive remedy for
21  discrimination in employment by the Postal Service on
22  the basis of handicap.").  The liability standards
23  under the ADA are incorporated into the Rehab Act.  See
24  29 U.S.C. § 791(g); Walton v. U.S. Marshals Serv., 492
25  F.3d 998, 1005 (9th Cir. 2007); McLean v. Runyon, 222
26  F.3d 1150, 1153 (9th Cir. 2000).  To the extent, then,
27  that Plaintiff attempts to raise an ADA claim against
28  Defendants, those claims are **DISMISSED with prejudice.**

9

**B.   Res Judicata Bars Plaintiff's Remaining Claims**

"'The doctrine of *res judicata* provides that a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'"   Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1051 (quoting In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997)); Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.5 (1979).   "The elements necessary to establish *res judicata* are: '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.'"   Id. at 1052 (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003)).   Crucially, "[r]es judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action.'"   Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (quoting W. Radio Servs. Co. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997)).

Defendants argue that all of Plaintiff's remaining claims under the Rehab Act are barred by res judicata. Mot. 15:1-4.

Plaintiff does not appear to dispute that the July 9, 2010 "Order Re Defendant John Potter's Motion for Summary Judgment" in Scott I (Def.'s Ex. 8) and the February 8, 2011 "Order Re Defendant John Potter's Motion for Summary Judgment" (Def.'s Ex. 11) constitute

1   final judgments on the merits.  Plaintiff also does not
2   contest that an identity of parties exists between the
3   parties in Scott I, II, and III and those in this case.

4       Instead, Plaintiff focuses his argument on
5   contesting the identity of claims between the suits.
6   Plaintiff argues that res judicata cannot apply to the
7   wrongful acts alleged in this Action because the
8   wrongful acts alleged in Scott I, II, and III occurred
9   at different times than those in this Action.  <u>See</u>
10  Opp'n 2:25-4:17.

11      "Identity of claims exists when two suits arise
12  from 'the same transactional nucleus of facts.'"
13  <u>Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.</u>, 298
14  F.3d 1137, 1142 n.3 (9th Cir. 2002) (quoting <u>Owens</u>, 244
15  F.3d at 714); <u>see also</u> <u>Adams v. Cal. Dep't of Health</u>
16  <u>Servs.</u>, 487 F.3d 684, 689 (9th Cir. 2007) (quoting
17  <u>Constantini v. Trans World Airlines</u>, 681 F.2d 1201-02
18  (9th Cir. 1982)) (noting that whether two suits arose
19  out of the same transactional nucleus of facts is the
20  most important factor for determining the identity of
21  claims).  "'Whether two suits arise out of the same
22  transactional nucleus depends on whether they are
23  related to the same set of facts and whether they could
24  conveniently be tried together.'"  <u>Turtle Island</u>
25  <u>Restoration Network v. U.S. Dep't of State</u>, 673 F.3d
26  914, 918 (9th Cir. 2012) (quoting <u>ProShipLine Inc. v.</u>
27  <u>Aspen Infrastructures Ltd.</u>, 609 F.3d 960, 968 (9th Cir.
28  2010)).  In fact, in most cases, this inquiry is the

same as whether the claim could have been brought in the first action. Id. (quoting United States v. Liquidators of European Fed. Credit Bank, 630 F.3d 1139, 1151 (9th Cir. 2011)). "[W]here claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding." Id.

Plaintiff's allegations in the instant Action arise from the same transactional nucleus of facts as those in Scott I, II, and III. Many of Plaintiff's claims in this Action are identical to those alleged in Scott I, II, and III. Just as they did in Scott I, II, and III, Plaintiff's claims in this Action stem from Plaintiff's 2005 right shoulder repetitive motion injury. FAC ¶ 15; Def.'s Ex. 7 at ¶ 14; Def.'s Ex. 9 at ¶ 14; Def.'s Ex. 10 at ¶ 14.

Furthermore, in this Action, stemming from Plaintiff's repetitive motion injury, Plaintiff claims that on April 21, 2009, May 11, 2009, May 26, 2009, November 18, 2009, and December 21, 2009, the USPS sent him home or denied him work because it had no available necessary tasks within his medical restrictions. FAC ¶¶ 6, 18-21, 37, 39, 41. In this manner, Plaintiff claims, Defendants discriminated against him in violation of the Rehab Act, retaliated against him for his prior EEO activity, failed to accommodate him, subjected him to a hostile work environment, and

constructively terminated him.   FAC ¶¶ 63-99.

     Similarly, in Scott I, Plaintiff alleged that the USPS violated the Rehab Act when his supervisor "told Plaintiff to 'spread the flats' or go home."   Def.'s Ex. 7 at ¶ 23.   Plaintiff refused, which meant that the USPS "failed to provide Plaintiff with reasonable accommodations, which accommodations would have provided him with eight (8) hours of work for a work week."   Id. at ¶ 24.   In other words, Plaintiff alleged that the USPS violated the Rehab Act by sending him home after determining that it had no work within Plaintiff's medical restrictions.   Plaintiff also alleged that the USPS created a hostile work environment (id. at ¶ 21), subjected him to disparate treatment (id. at ¶ 27), and retaliated against him as a result of his physical disability and participation in EEO activity.   These actions took the form of the USPS failure to reasonably accommodate his disability, as well as through minor confrontations with supervisors, such as Postmaster Tyrone Williams ordering Plaintiff to remove an earpiece and denying his leave requests.   Id. at ¶¶ 21-27.

     In Scott II, Plaintiff alleged that the USPS violated the Rehab Act by denying him a suitable job offer and refusing to provide him with available work.[5]

---

     [5] Specifically, Plaintiff alleged that his supervisors stripped him of his job assignment, tried to coerce him into accepting another job offer, and "refused to provide Plaintiff with available work within Plaintiff's medical restrictions."

1  Def.'s Ex. 9 at ¶¶ 21-23.   Furthermore, Plaintiff

2  alleged that his supervisors discriminated against him

3  by refusing to respond to his leave and schedule change

4  requests, did not allow him to work his reasonably

5  accommodating job duties, and retaliated against him

6  for his EEO activity.  Id. at ¶¶ 21-33, 38-41.   In

7  Scott III, Plaintiff alleged that the USPS violated the

8  Rehab Act and subjected him to a hostile work

9  environment, disparate treatment, and retaliation when

10 "[o]n April 20, 2009, Postmaster Tyrone Williams

11 notified Plaintiff that the United States Postal

12 Service did not have any work within his medical

13 restrictions, and told him to go home and not to report

14 back for duty unless contacted by the Agency." Id. Ex.

15 10 at ¶ 26.  Plaintiff's allegations in Scott II and

16 III mirror those in Scott I and in this Action.   In all

17 four cases, the USPS is alleged to have sent Plaintiff

18 home or denied him work because it did not have any

19 available necessary tasks within his medical

20 requirements.   In fact, some of Plaintiff's allegations

21 in Scott III fall within the same time frame as the

22 allegations in this Action.[6]  Given that all of

23 Plaintiff's claims in this Action stem from his 2005

24

25 Def.'s Ex. 9 at ¶¶ 21-23.

26      [6] Plaintiff alleges that on April 21, 2009, Postmaster
   Williams sent him home because the USPS did not have work
27 available for him.  FAC ¶ 18.  In Scott III, Plaintiff alleges an
   identical incident took place on April 20, 2009.  Def.'s Ex. 10
28 at ¶ 26.

                              14

injury, they arise from the same transactional nucleus
of facts as those in Scott I, II, and III.  Plaintiff's
claims in this Action, then, are barred by the doctrine
of res judicata.

Plaintiff avers, however, that applying res
judicata here would be inequitable because he could not
have pleaded them in a prior district court action.
Opp'n 4:18-5:2.  Plaintiff claims that he was put on
leave several times between 2009 and 2012 and could not
have alleged these instances in Scott II or III because
those actions were on appeal.  Id. at 8:3-14.

Plaintiff's argument is clearly without merit with
respect to those claims occurring prior to November 25,
2009, when his Scott III complaint was filed.  Def.'s
Ex. 10.  There is no question that Plaintiff could have
alleged all alleged acts of discrimination occurring
prior to that point in his Scott III complaint.  With
respect to Plaintiff's allegation that the USPS denied
him work on December 21, 2009, Plaintiff plainly had
the opportunity to seek a stay or attempt to amend his
complaint to add this claim in Scott I as that court
did not issue its summary judgment order until July 9,
2010 (id. Ex. 8) and the Scott II and III court did not
issue its summary judgment order until February 8, 2011
(id. Ex. 11).  Nevertheless, Plaintiff failed to do so
and his claims are thus barred by res judicata.  See
Owens, 244 F.3d at 714-15 (holding that Title VII
claims are not exempt from res judicata where

15

1  plaintiffs have not sought a stay or tried to amend

2  their complaint to include those claims).

3      Finally, Plaintiff argues that he only pursued the

4  instant case after appealing Defendants' December 21,

5  2009 Letter of Decision informing Plaintiff that it had

6  no work for him with the Merit Systems Protection Board

7  ("MSPB") (Opp'n 8:15-9:2) and filing two formal

8  complaints with the Equal Employment Opportunity

9  Commission ("EEOC") on January 11, 2012 and June 22,

10 2012 for continued discrimination and retaliation

11 (Opp'n 9:3-11).

12     To the extent that Plaintiff claims that his filing

13 of an appeal with the MSPB regarding the December 21,

14 2009 letter allows him to avoid the doctrine of res

15 judicata, that argument is squarely foreclosed.  Courts

16 have held that claims litigated to a judgment in

17 another case are not exempt from res judicata merely

18 because a party properly exhausted his administrative

19 remedies in the interim.  <u>Peters v. Dist. of Columbia</u>,

20 873 F. Supp. 2d 158, 177 (D.D.C. 2012) (quoting <u>Int'l</u>

21 <u>Union v. Clark</u>, No. 02-1484, 2006 WL 2598046, at *12

22 n.19 (D.D.C. Sept. 11, 2006)).  To the extent that

23 Plaintiff argues that his filing of complaints with the

24 EEOC in 2012 revives his claims of discrimination and

25 retaliation, that argument is similarly foreclosed.

26 <u>See</u> <u>Boateng v. InterAmerican Univ., Inc.</u>, 210 F.3d 56,

27 63 (1st cir. 2000) (holding that Title VII claims may

28 be precluded by a prior adjudication even though a

16

1  right-to-sue letter had not been obtained until after

2  final judgment had been entered in the first action);

3  <u>Churchill v. Star Enters.</u>, 183 F.3d 184, 193 (9th Cir.

4  1999).

5  **C.   Plaintiff's Constructive Termination Claim is Also**

6  **      Barred by Res Judicata**

7       Plaintiff argues, however, that his constructive

8  termination claim arose in June 2012 and is therefore

9  not barred by res judicata.  Mot. 15:5-19:2; Opp'n 5:3-

10 23.

11      The crux of Plaintiff's constructive termination

12 claim is that on January 30, June 30, or July 30, 2012,

13 Plaintiff retired because he was subject to intolerable

14 working conditions arising out of his past EEO activity

15 and for filing a claim with the USPS' OWCP.  FAC ¶ 94.

16 The only facts Plaintiff alleges as occurring outside

17 the scope of Scott I, II, and III are a June 26, 2012

18 incident where Plaintiff was confronted by a supervisor

19 who asked Plaintiff "What are you going to do about

20 it?!" and Plaintiff's retirement four days later.  FAC

21 ¶¶ 50-51.

22      Plaintiff predicates the entirety of his claim,

23 however, on allegedly intolerable practices already

24 adjudicated to be lawful in Scott I.  More

25 specifically, the only acts Plaintiff alleges to

26 constitute constructive termination are Defendants'

27 failures to accommodate Plaintiff by finding him work

28 within his medical requirements - all arising from

                                 17

Plaintiff's 2005 shoulder injury.  FAC ¶¶ 18-21, 25, 29, 37-39, 41.  These same facts - and many of the same instances - were already addressed in the Scott I court's summary judgment order.  Plaintiff cannot relitigate his claims by simply alleging a few additional facts.  Misischia v. St. John's mercy Health Sys., 457 F.3d 800, 805 (8th Cir. 2006) (quoting Dubuc v. Green Oak Twp., 312 F.3d 736, 751 (6th Cir. 2002)) ("The doctrine of res judicata would become meaningless if a party could relitigate the same issue . . . merely by positing a few additional facts that occurred after the initial suit").  The Court finds that Plaintiff's constructive termination claim is similarly barred by res judicata as it is identical to the claims he litigated in Scott I, II, and III.

**D.  <u>Leave to Amend is Not Granted</u>**

Plaintiff requests leave to amend if this Court is inclined to grant Defendants' Motion.  Plaintiff seeks leave to add a number of new allegations, including an alleged diagnosis of bipolar disorder, harassment and retaliation as a result of his doctor's visits, and whistleblowing activity relating to unlawful activity at the Compton Post Office.  Opp'n 6:24-8:6.

Courts have discretion to grant Rule 12(c) motions with leave to amend.  Lonberg v. City of Riverside, 300 F. Supp. 2d 942, 945 (E.D. Cal. 2004) (citing Carmen v. S.F. Unified Sch. Dist., 982 F. Supp. 1396, 1401 (N.D. Cal. 1997)).  This is particularly true where any

amendment would be futile.  <u>See In re Dynamic Random Access Memory (Dram) Antitrust Litig.</u>, 516 F. Supp. 2d 1072, 1113 (N.D. Cal. 2007).

In this case, any further amendment would be futile because Plaintiff's claims are barred by res judicata. <u>See Dommisse v. Napolitano</u>, 474 F. Supp. 2d 1121, 1129 (D. Ariz. 2007) ("Because of *res judicata*, this is a case where no amendment can cure the defects"); <u>see also Winget v. JP Morgan Chase Bank, N.A.</u>, 537 F.3d 565, 574 (6th Cir. 2008) (holding that district court did not abuse its discretion in dismissing complaint without leave to amend where amendment would be futile due to application of res judicata).  As such, the Court finds that leave to amend is not warranted here and exercises its discretion to dismiss this Action with prejudice.

### IV.  CONCLUSION

For the reasons set forth above, this Court **GRANTS** Defendants' Motion and **DISMISSES** this Action **with prejudice**.


**IT IS SO ORDERED.**

DATED: August 21, 2014

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge

19